[Civ. No. 1785. Third Appellate District.—March 1, 1918.]

## FRANK C. PILUSO, Respondent, v. F. F. SPENCER, Appellant.

PERSONAL RIGHTS—HOTEL ACCOMMODATIONS—LODGERS FOR INDEFINITE PERIODS—CONSTRUCTION OF CODE.—Section 51 of the Civil Code, providing that all citizens are entitled to the full and equal accommodations of "inns, restaurants, hotels . . . and all other places of public accommodation or amusement," etc., and section 52, imposing liability in damages for violation of such personal rights, contemplates by the use of the word "hotel" a public resort not only for temporary refreshment, but also for protracted accommodation, and applies to lodgers for indefinite periods as well as transient guests.

ID.—REMOVAL FROM HOTEL—ACTION FOR DAMAGES—PLEADING—SUFFI-CIENCY OF COMPLAINT.—In an action brought under sections 51 and 52 of the Civil Code for the violation of the personal rights of the plaintiff in inciting a hotel-keeper to eject plaintiff from the hotel, the complaint shows a causal connection between the act of defendant and the removal, where it is alleged that the defendant "incited" the proprietor to discriminate against the plaintiff, the term carrying with it the idea of encouragement, persuasion, and inducement.

ID.—MALICE OF DEFENDANT — EVIDENCE — TREATMENT OF PLAINTIFF IN OTHER MATTERS.—In an action brought under sections 51 and 52 of the Civil Code for damages for causing plaintiff's removal from a hotel, evidence of defendant's treatment of plaintiff in other matters not alleged in the complaint was admissible to show the general course of conduct of defendant toward plaintiff in support of the allegation of malice contained in the complaint and indicative of oppression.

ID.—LETTER WRITTEN BY DEFENDANT TO HOTEL-KEEPER—VACATING OF ROOMS BY PLAINTIFF—INCREASE IN BOARD.—In an action brought under sections 51 and 52 of the Civil Code for damages for causing plaintiff's removal from a hotel, a letter written by defendant to the hotel-keeper requesting him to inform plaintiff that he would have to have the rooms plaintiff was occupying, and that board at the restaurant would be doubled, was admissible for the purpose of showing hostility and malice.

ID.—INSTRUCTION—ADMISSIONS OF PLEADING AND EVIDENCE—DUTY OF JURY.—An instruction directing the jury to render a verdict for the plaintiff if they found certain facts from the admissions of the pleadings and evidence did not impose upon the jury the responsibility of construing the pleadings, where the court had already informed the jury as to what facts were admitted therein.

ID.—TREATMENT OF LODGER AND GUEST—HOTEL PUBLIC PLACE OF AC-COMMODATION.—An instruction declaring that under sections 51 and 52 of the Civil Code there is no difference as to the treatment demanded between a lodger and a guest in a public place of amusement or accommodation, and that a hotel is a public place of accommodation, is proper.

ID.—AMOUNT OF PUNITIVE DAMAGES.—An instruction that the jury might award punitive damages for malice or oppression in the excess of the fifty dollars fixed by the statute, is not objectionable.

ID.—DUTY OF HOTEL-KEEPER.—An instruction that the law does not impose upon the keeper of an inn or hotel the duty to furnish the public or any person a place of residence or a place of business in such inn or hotel, but only imposes upon the keeper of such hotel or inn the duty to give accommodations alike to all who compose the traveling public, making no distinction on account of race or color, or for any other

36 Cal. App.—27

reason not applicable alike to all persons, is objectionable in its first part, as being too sweeping, and the latter portion is covered by an instruction that if plaintiff was permitted the ordinary and usual accommodations and was not, on account of his race or color, or for any other cause or reason other than such as was applicable to all, denied such privileges and accommodation, the verdict must be for defendant.

APPEAL from a judgment of the Superior Court of Siskiyou County. James F. Lodge, Judge.

The facts are stated in the opinion of the court.

Taylor & Tebbe, for Appellant.

H. R. Raynes, and L. F. Coburn, for Respondent.

BURNETT, J.—The action was brought under sections 51 and 52 of the Civil Code for the violation of the "personal rights" of plaintiff. After alleging that one H. W. Pollman was and had been for some time "the keeper and did keep a hotel for the accommodation of lodgers and travelers" in the town of McCloud, in the county of Siskiyou, and that plaintiff and his wife and child lodged in said hotel from August 14, 1914, until November 20th, paying all of said Pollman's demands in full for said lodging, the complaint proceeds: "That on or about the 20th day of November, 1914, said H. W. Pollman did wantonly, wrongfully, willfully and maliciously and without any good cause therefor discriminate against and refuse to permit and did not permit said plaintiff to continue to lodge in said hotel and did then and there wrongfully, willfully and maliciously and without any good cause therefor discriminate against and remove and eject plaintiff from said hotel, all for the purpose of depriving said plaintiff of a place of abode in said town of McCloud and for the purpose of compelling plaintiff to leave and depart from said town of McCloud and for the purpose of harassing, annoying and vexing plaintiff."

The allegation as to the defendant's participation in the transaction is as follows: "That on or about the 4th day of November, 1914, defendant herein did wrongfully, willfully and maliciously and without any good cause therefor incite said H. W. Pollman to so discriminate against and to so

refuse to permit said plaintiff to continue to so lodge in said hotel as hereinbefore set forth and did then and there wrongfully, willfully and maliciously and without any good cause therefor incite said H. W. Pollman to so discriminate against and to so remove and eject plaintiff from said hotel as above set forth."

Said section 51, as far as is necessary to quote, is as follows: "All citizens within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, and privileges of inns, restaurants, hotels, . . . and all other places of public accommodation or amusement, subject only to the conditions and limitations established by law and applicable alike to all citizens."

We also quote from said section 52 as follows: "Whoever violates any of the provisions of the last preceding section, by denying to any citizen, except for reasons applicable alike to every race or color, the full accommodations, advantages, facilities, and privileges in said section enumerated, or by aiding or inciting such denial, or whoever makes any discrimination, distinction, or restriction on account of color or race, or except for good cause, applicable alike to all citizens of every color or race whatever, in respect to the admission of any citizen to, or his treatment in, any inn, hotel, . . . or other public place of amusement or accommodation, . . . or whoever aids or incites such discrimination, distinction, or restriction for each and every such offense is liable in damages in an amount not less than fifty dollars, which may be recovered in an action at law brought for that purpose."

The general intent and significance of the foregoing provisions are clear enough. The purpose, of course, is to compel a recognition of the equality of citizens in the right to the peculiar service afforded by these agencies for the accommodation and entertainment of the public. There is no doubt of the constitutionality of the provisions and of the sound public policy of such legislation. (*Greenberg* v. *Western Turf Assn.*, 140 Cal. 363, [73 Pac. 1050].)

This is not disputed, but it is urged here that the case does not fall within the inhibition of the statute, for the reason that plaintiff was not a "guest" at the hotel but a "lodger" for an indefinite period. The contention is based upon the rule at common law as to inns, and upon certain decisions which discuss the nature of these places of public refreshment

and accommodation. The California decisions to which appellant refers are *Pinkerton* v. *Woodward,* 33 Cal. 557, [91 Am. Dec. 657]; *Moore* v. *Long Beach Development Co.,* 87 Cal. 483, [22 Am St. Rep. 265, 26 Pac. 92]; *Fay* v. *Pacific Improvement Co.,* 93 Cal. 253, [27 Am. St. Rep. 198, 16 L. R. A. 188, 26 Pac. 1099, 28 Pac. 943]; *Magee* v. *Pacific Improvement Co.,* 98 Cal. 678, [35 Am. St. Rep. 199, 33 Pac. 772].

In the Pinkerton case, *supra,* the contention of the defendant was that he kept "a lodging-house" and not an "inn," but the supreme court decided that he held himself out to the world as an innkeeper, and that he could not "be heard to say that his professions were false and that he was not in fact an innkeeper." He was therefore held to the responsibilities for the property of his guests which by his representations he induced them to believe he would assume. Therein was not involved any such statute as the one before us here.

In the Moore case, also, the question was as to the liability of the defendant for the property of the patron, and the distinction as to such liability between the case of a *boarder* and of a *guest* was recognized. It seems that the complaint therein counted upon the fact of the plaintiff being a *guest,* but it was held that he was a *boarder,* and must therefore bear the loss of his personal effects caused by a fire.

Again in the Fay case, the question of liability for loss of personal effects turned upon the consideration as to whether the place of entertainment was a "public inn" or a select boarding-house, and the court held that it was the former, and that the general rule as to inns applied.

In the Magee case a similar question was involved, and the court there held that there should have been a finding as to whether the plaintiff was a guest or a boarder, and it was declared that whether "the plaintiff made a special arrangement respecting her stay with the defendant was only evidence to be considered by the court in determining the ultimate fact whether she was a guest or a boarder. Even if the finding of the court that she had made a special arrangement with defendant for board and lodging by the week had been sustained by the evidence, that fact would not be determinative of the issue whether she was a guest or boarder,

but would be merely evidence to be considered in determining that issue.''

However, it may be said, that the rule as to such liability has been changed in this state by the amendment (Stats. 1895, p. 49) of section 1859 of the Civil Code, so as to include a ''hotel-keeper, boarding and lodging house keeper,'' as well as ''innkeeper.''

The statute in question herein also recognizes *inns* and *hotels* as belonging to two distinct classes, and we think it cannot be said that the decisions in·reference to *inns* are necessarily controlling in this case, involving, as it does, the duty of a hotel-keeper. It may not be possible to make a clear distinction that will apply to all cases, and, no doubt, sometimes the terms *''inns''* and *''hotels''* are used interchangeably, but we are entirely satisfied that in said section by the use of the term *''hotel''* the legislature contemplated a public resort not only for temporary refreshment but also for protracted accommodation. It is a matter of common knowledge, indeed, that the places designated as hotels in this state are open to the accommodation of permanent as well as transient guests. And, unless it appears to the contrary, we would have a right to conclude that having advertised the resort as a hotel, the proprietor intended to receive guests for an indefinite period as well as the traveling public. But, as far as the complaint is concerned, it may be added, it was expressly alleged, as we have seen, that the hotel was kept for the accommodation of *''lodgers* and travelers.''

Nor do we think that there is any merit in the contention that the complaint fails to show a causal connection between the act of the defendant and plaintiff's removal from the hotel,—in other words, that defendant's conduct was effective to accomplish the purpose which he had in mind. The complaint alleges that defendant *incited* the proprietor to discriminate against the plaintiff. The term carries with it the idea of encouragement, persuasion, and inducement and is sufficient for the suggested purpose. And it may be said that the evidence shows without any conflict that it was only by reason of said incitement of defendant that the proprietor ejected plaintiff from the hotel.

It does not appear in the complaint that plaintiff used his room therein for an office. Hence, appellant's criticism upon that supposition is without significance.

Indeed, we are satisfied that the complaint is not substantially defective in any respect, although it probably contains some unnecessary and evidentiary averments that might have been stricken out on the motion of appellant. However, the order denying it was without prejudice.

As to the evidence, appellant claims that the court erred in allowing proof of his treatment of respondent in other matters not alleged in the complaint. One of these instances was in relation to an automobile business in which plaintiff had embarked, and he was asked: "Well, what caused you to cease your occupation there then, running this machine for hire?" His answer was: "Spencer stopped me from it. I ceased working for the McCloud River Lumber Co., there in the store about May, 1914, May or June, I think, some time like that." There were also introduced two letters complaining of his activity in said business, one of them signed, "The McCloud River Lumber Co. F. F. Spencer, Ass't to Pres't," and the other, "F. F. Spencer, Ass't to Pres't." A written notice to surrender possession of a cottage occupied by plaintiff and his family and belonging to said company, and a notice of the termination of his tenancy, signed in a similar manner, were also received in evidence. We think this line of evidence was admissible to show the general course of conduct of appellant toward respondent in support of the allegation of malice contained in the complaint and indicative of oppression. (*Lyon* v. *Hancock*, 35 Cal. 376; *Davis* v. *Hearst*, 160 Cal. 166, [116 Pac. 530].) As to the contention that the signature indicated that the writing emanated from the company, it is sufficient to say that it appears that such matters were under the complete control and direction of the defendant. For the purpose of showing hostility and malice on the part of appellant, we think, also, that this letter was admissible:

"Mr. Pollman: Will you please inform Frank Piluso that you will have to have the rooms he is occupying in the hotel —also that board at the restaurant will be doubled after today.                                    Yours truly,

"F. F. SPENCER."

The following from the same source addressed to the clerk of the hotel stands on the same footing:

"11–20–14.

"Jack: All you have to do now is to move Piluso's effects from the room and lock the door. Nick will help you if you need assistance.

"F. F. S."

It may be stated that the Nick therein referred to was the deputy sheriff.

There is other evidence in support of the position that appellant was influenced by ulterior motives in his efforts to have respondent removed from the hotel and that other guests received entirely different treatment. Indeed, the clerk testified that in obedience to Spencer's letter he doubled the price of meals for Piluso but did not for anyone else, because he had no instructions from Spencer, and that the sole reason for the ejectment was in consequence "of these letters received from Mr. Spencer," and that the Pilusos "were there a couple of months," and "I found no fault with their conduct; they were all right."

We deem it unnecessary to notice further the contention that the hotel was not for the accommodation of permanent lodgers, and that therefore there was no discrimination against respondent. It was a fair inference from the advertisement offered in evidence and from the testimony of plaintiff that he belonged to a class gladly received and entertained at this public place. Indeed, it abundantly appears that his ejectment was not by reason of the fact that his stay was to be indefinite.

There is some pretense that appellant incited the dismissal of respondent for the reason that he was using his room for an office and also because his wife used an electric "toaster" in preparing breakfast for their son, but we are satisfied that the jury was warranted in finding that no such reason animated appellant in the matter. If such consideration had been regarded, he would undoubtedly have made complaint or notified plaintiff to discontinue such use of the room. From the whole record the conclusion seems quite unavoidable that defendant's conduct arose from a desire to make it impossible for plaintiff to secure a place of abode in the town.

As to the instructions, we find no prejudicial error. The court directed the jury to render a verdict for the plaintiff if they found certain facts from the admissions of the plead-

ing and the evidence. This, however, did not impose upon the jury the responsibility of construing the pleadings, as claimed by appellant, since the court had already informed the jury as to what facts were admitted therein.

We think the court was right in declaring that under said provisions of the Civil Code there is no difference as to the treatment demanded "between a lodger and a guest in a public place of amusement or accommodation," and that "a hotel is a public place of accommodation."

We find no fault with the instruction that the jury might award punitive damages for malice or oppression in excess of the fifty dollars fixed by the statute. The maximum recovery was declared to be two thousand five hundred dollars. The instruction clearly contemplated that this should include the fifty dollars as well as the other element, and was in harmony with the principle announced in the decision of the Greenberg case, *supra*.

As to all the instructions given it might be said that we could presume they were given at the request of the defendant, since it does not appear to the contrary, but in our consideration of them we have not followed that presumption.

Of the four instructions refused by the court we consider the following worthy of specific notice: "The court instructs you that the law does not impose upon the keeper of an inn or hotel the duty to furnish the public or any person a place of residence or a place of business in such inn or hotel, but only imposes upon the keeper of such hotel or inn the duty to give accommodations alike to all who compose the traveling public, making no distinction on account of race or color or for any other reason not applicable alike to all persons." The first part of the instruction is subject to criticism. The statement is too sweeping. If it were the practice and custom of the particular hotel to receive and entertain other guests of that class, it would have no right to discriminate arbitrarily against the plaintiff.

As to the latter part of the instruction, it was covered by this part of the charge: "If you find that plaintiff was permitted the ordinary and usual accommodations at the McCloud Hotel, and was not, on account of his race or color, or for any other cause or reason other than such as was applicable to all, denied such privileges and accommodation, then I instruct you that your verdict must be for the defendant."

We find no prejudicial error in the case, and the judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 29, 1918.